**Alex Meggitt**, OSB #174131
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
ameggitt@ojrc.info
Telephone: 503-944-2270
Facsimile: 971-275-1839

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NORMAN WICKS, | Case No. 3:22-cv-00446-HZ |
| Plaintiff, | |
| v. | FIRST AMENDED COMPLAINT |
| CITY OF PORTLAND, MATTHEW BROWN, and JOHN DOES 1 AND 2, | Civil Rights Action (42 U.S.C. § 1983) |
| Defendants. | JURY TRIAL DEMANDED |

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Norman Wicks is a disabled and elderly man who, at the times relevant to this complaint, was living on the streets of Northwest Portland in a car shared with his son, who also acted as his caretaker. In retaliation for Mr. Wicks's complaints about police misconduct and inattention to the safety of the houseless population, Portland Police Bureau officers seized Mr. Wicks's vehicle without probable cause, then separated him from his son and abandoned him in a homeless shelter. For

COMPLAINT
Page 1 of 13

the physical and emotional injuries Mr. Wicks suffered during this ordeal, he is entitled to damages and an award of attorneys' fees and costs.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4). The court has supplemental jurisdiction over the State tort claims pursuant to 28 U.S. Code § 1367(a).

2. This First Amended Complaint does not relate back to the filing of Plaintiff's original, *pro se* complaint.

## VENUE

3. Venue is proper within the District of Oregon because a substantial part of the events giving rise to this claim occurred in this judicial district, and all parties reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Portland, Multnomah County, Oregon.

## PARTIES

4. Norman Wicks, Plaintiff, at the time of filing and all material times, was a citizen of the State of Oregon.

5. Defendant City of Portland (hereinafter, "City") is a political subdivision of the State of Oregon with the capacity to sue and be sued. The City runs the Portland Police Bureau (hereinafter, "PPB"). On information and belief, each and every decision to violate Plaintiff's rights was made and/or ratified by a sufficiently high level as to be policy decision of the City.

On information and belief, the law enforcement officers who violated Plaintiff's rights were acting pursuant to the practice or policy of the City.

6. Defendant Matthew Brown was, at all times relevant to this complaint, a PPB detective. Defendant Brown was, at all times relevant to this complaint, acting in a supervisory capacity over officers John Doe 1 and John Doe 2. At all times relevant to this complaint, Defendant Brown was acting under color of state law. He is sued in his individual capacity.

7. Plaintiff does not know the name of Defendant John Doe 1, and thus sues them under a fictitious name. Defendant John Doe 1 is a PPB officer. At all times relevant to this complaint, Defendant John Doe 1 was acting under color of state law. He is sued in his individual capacity.

8. Plaintiff does not know the name of Defendant John Doe 2, and thus sues them under a fictitious name. Defendant John Doe 2 is a PPB officer. At all times relevant to this complaint, Defendant John Doe 2 was acting under color of state law. He is sued in his individual capacity.

**FACTUAL ALLEGATIONS**

**I.   The Incident**

9. Norman Wicks is a 78-year-old houseless man. He is disabled and unable to walk. Due to his condition, he is dependent on a caretaker. Mr. Wicks's 46 year-old son, also houseless, acts as his father's caretaker.  At the time of the events described in this complaint, they had been living together in the car, a 1991 Oldsmobile Cutlass Supreme, for some time. They generally stayed in NW Portland.

10. Both Mr. Wicks and his son are concerned about police misconduct and abuse of power. They film police activity that they witness in order to document potential constitutional violations committed by law enforcement officers, and they post that footage to YouTube with

their commentary. Around this time, they also documented people breaking into cars in the area they regularly stayed in the hope of curtailing a rash of property crimes against people living in vehicles. To better observe and document these events, they obtained camera equipment and binoculars. They frequently contacted police about break-ins they witnessed and/or documented, but never received any response. Officers patrolling the area on foot would ignore the Wicks' concerns, sometimes winking or blowing kisses at them from a distance.

11. On February 28, 2022, Mr. Wicks and his son were parked at approximately 1378 NW 18th Avenue in Northwest Portland.

12. That day, PPB Detective Matthew Brown approached the Wicks while they were in the car. He told them he was seizing their car and belongings. He presented a search warrant he had obtained that purported to allow him to seize the car and items within it that could constitute evidence of the crime of stalking, such as "binoculars, signs, white board, phones, pens, markers, plants, greeting cards, paperwork, receipts, letters, documents," and other items.

13. Defendant Brown expressed his delight at seizing the Wicks' vehicle. He told Mr. Wicks that he was going to use the Wicks' car for undercover police operations, telling him, "Boy, I sure am going to look good in this car using it as a drug sting car."

14. Defendants' seizure of Mr. Wicks's car and belonging was unreasonable.

15. Defendant Brown lacked probable cause for seizing Mr. Wicks's car and other belongings.

16. Defendants Brown and John Does 1 & 2 seized Mr. Wicks's property out of retaliation for his outspokenness, on the internet and in person to police officers, about police misconduct and his complaints about police failure to address the burglaries targeting houseless people living in vehicles.

17.     Defendant Brown had the Wicks removed from their car. He had Defendants John Doe 1 and John Doe 2 drive Mr. Wicks to a hospital in NW Portland, while other officers took his son to SE Portland.

18.     The Defendant Doe officers dragged Mr. Wicks into their car and drove him to a hospital. They knocked his head against the door in removing him from the car and hurt his back and hip with their rough treatment of him. They dragged him into the entrance to the hospital. Hospital staff told the officers they could not take Mr. Wicks, so the Defendant Doe officers again dragged him back to their car. They then drove Mr. Wicks to a homeless shelter, where they carried him to a bed and left him.

19.     Upon realizing Mr. Wicks's need for serious and continuous medical care, shelter staff had Mr. Wicks taken to Legacy Emmanuel hospital. The hospital admitted Mr. Wicks, and he stayed there for up to 11 days.

20.     Mr. Wicks was out of contact with his son for several days, as they had no means to contact each other. The separation from his son and caretaker, the rough manner in which the officers handled him, and the unreasonable and unnecessary seizure of the vehicle he lived in caused Mr. Wicks economic harm and physical and emotional pain throughout this ordeal.

**II. *Monell* Allegations**

21.     The City has allowed several policies, practices, or customs related to PPB treatment of homeless individuals to continue for several years. These policies, practices, or customs allowed Defendant Brown and the John Doe defendants to mistreat Mr. Wicks in the knowledge they would not face consequences for their actions.

22. In 2018, a data analysis found that approximately 52% of individuals arrested by Portland Police were homeless. That proportion has remained consistent through 2022 and the time that police encountered Mr. Wicks in February 2022.

23. In 2019, the City's Independent Police Review analyzed PPB's policy regarding interactions with homeless people. That report noted that officers are not required to document exchanges with homeless people that are "mere conversation," and the Bureau had no consistent policy for recording a person's housing status. Police officers also reported they were unsure in their role in the City's efforts to address the homeless crisis. Then-PPB Chief Outlaw responded to the report by noting that PPB would strengthen its existing policies and procedures and improve data collection.

24. Portland Police do not wear body cameras to document their interactions with the public, including homeless individuals.

25. The City of Portland has or had a policy, practice, or custom that allowed for the unreasonable seizure and discarding or destruction of homeless people's property. Homeless individuals brought a class action lawsuit against the city for these practices in 2021. It was not until May 2022 that the City instituted policies allowing a clear process for homeless people to retrieve property seized during sweeps of homeless encampments that did not involve interaction with law enforcement.

26. PPB Officers who engage in misconduct know that the City has no effective tools to discipline them. City ordinances establish the Independent Police Review (IPR), an office empowered to act on complaints against Police Bureau personnel for alleged misconduct. The Collective Bargaining Agreement with the Portland Police Association prohibits IPR investigators from compelling officers, whether witnesses or subjects, to answer IPR investigator

questions, leaving IPR investigators to evaluate accusations of misconduct based primarily on PPB members' self-serving written accounts. According to one former IPR investigator, due to the Portland Police Directives and IPR rules, investigators are "often left with no alternative but to exonerate officers whose behavior was reprehensible." As a result, the percentage of cases that IPR sustained as violations of PPB directives fell from approximately 20% in 2018 to approximately 10% in 2019, 2020, and 2021 to just 6% in 2022. In an example of the IPR's toothlessness, in 2021, IPR found two instances of police use of force during a Black Lives Matter protest to be within policy, contrary to a federal court order that found the same uses of force in contempt.

## Claim 1: Fourth Amendment – Unlawful Seizure – Individual Liability
### (42 U.S.C. § 1983)

27. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

28. Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his property.

29. Defendants Brown and John Does 1 & 2 seized Mr. Wicks's property, including his car and all of the possessions he stored inside his car.

30. Defendants Brown and John Does 1 & 2 acted intentionally in seizing Mr. Wicks's property.

31. Defendants' seizure of Mr. Wicks's property was unreasonable.

32. As a direct and proximate result of Defendants' unconstitutional acts, Plaintiff suffered the permanent deprivation of his property and associated mental harms, outrage, betrayal, offense, indignity, and insult causing damage in amounts to be determined at trial.

**Claim 2: First Amendment – Unlawful Pattern and Practice – Municipal Liability**

**(42 U.S.C. § 1983)**

33. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

34. Defendant City of Portland has had a combination of longstanding policies, including failure to ensure documentation of police interactions with homeless individuals, unreasonable seizure and discarding of homeless people's property, and an ineffectual police discipline system.

35. These policies, practices, or customs, coupled with Defendant City of Portland's failure to take action to correct the gaps in those policies, practices, or customs, allowed Defendants to retaliate against Mr. Wicks acting pursuant to these policies practices or customs, knowing they would have to provide minimal if any documentation of their interactions with him and they would not face consequences for mistreating him, in violation of his First Amendment rights.

36. Defendants, acting pursuant to this policy, custom, or practice, unlawfully retaliated against Plaintiff as alleged above, causing his injuries. The retaliation against Plaintiff by Defendants acting pursuant to the above-described policies, practices, or customs was the direct and proximate cause of his economic and bodily injury, pain, loss of liberty, mental and emotional suffering, worry, fear, anguish. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

**Claim 3: First Amendment – Retaliation – Individual Liability**

37. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

38. Plaintiff was engaged in constitutionally protected acts of free speech, including documenting police activity in public and commenting on police misconduct.

39. The First Amendment protects persons from unlawful curtailment of expressive conduct, assembly, and associations with one another.

40. Plaintiff's protected activity was a substantial or motivating factor in the individual Defendants' conduct. Defendants Brown and John Doe 1 & 2's retaliatory motives were the but-for cause of Plaintiff's injuries. In seizing the vehicle in which Plaintiff lived without probable cause, separating him from the son who is his caretaker, handling him roughly in moving him in and out of a police vehicle, and abandoning him in a shelter with no means to contact his son or take care of his serious medical needs, Defendants were motivated by retaliation for Plaintiff's outspoken criticism of law enforcement officers and agencies. Defendants' actions chilled Plaintiff's political speech, violating his First Amendment rights, and would chill a person of ordinary firmness from continuing to engage in such protected activity.

41. The above-described conduct was a proximate cause of harm to Plaintiff. The retaliation against Plaintiff was the direct and proximate cause of economic and bodily injury, pain, loss of liberty, mental and emotional suffering, worry, fear, and anguish. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

### Claim 4: Fourteenth Amendment – Due Process – Individual Liability
### (42 U.S.C. § 1983)

42. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

43. Under the Fourteenth Amendment, a person has the constitutional right to be free from a government employee affirmatively placing that person in a position of actual, particularized danger (or in a situation of actual, particularized danger that is more dangerous than the position that the person already faced) if the government employee acted with deliberate indifference to a known or obvious danger.

44. Based on orders from Defendant Brown, Defendants John Doe 1 and 2 committed the affirmative acts of separating Mr. Wicks from the son who acts as his caretaker, handling him roughly in moving him in and out of a patrol car, and abandoning him in a homeless shelter bed without any means to contact his son or have his serious medical needs taken care of.

45. The affirmative acts of Defendants placed Mr. Wicks in a position of actual danger by exposing Mr. Wicks to a danger he otherwise would not have faced.

46. Defendants Brown and John Does 1 & 2 acted with a deliberate indifference to the known or obvious dangers of abandoning Mr. Wicks in a shelter while knowing of his physical disabilities and his need for support from his son.

47. Defendants' acts that created the danger to Mr. Wicks caused him foreseeable injury.

48. As a direct and proximate result of Defendants' unconstitutional acts, Plaintiff suffered the deprivation of his property and the care and comfort of his caretaker son, as well as associated physical and mental harms, fear, anxiety, outrage, betrayal, offense, indignity, and insult causing damage in amounts to be determined at trial.

### Claim 5: Negligence

### (State Tort Claim against Defendant City of Portland)

49. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

50. Defendant City of Portland, acting by and through its employees and agents, was negligent in one or more of the following ways:

    I. In seizing the car that Mr. Wicks lived in without probable cause or the necessity to impound the vehicle;

    II.      In separating Mr. Wicks from his son without providing them with a means of getting in contact or otherwise reuniting;

    III.     In handling Mr. Wicks in a rough manner, causing him injury and embarrassment, when transporting him in and out of a police vehicle;

    IV.     In leaving Mr. Wicks on a bed in a homeless shelter without his belongings or communicating his medical needs to staff.

51. Defendant City of Portland's agents and employees know or should have known that their acts or omissions would result in a foreseeable risk of harm and suffering to Mr. Wicks. Because of this foreseeable risk, Defendant owed Mr. Wicks the reasonable care and duty of not exposing him to such harm.

52. Defendant City of Portland's agents' and employees' conduct was unreasonable in light of the risk of harm to Mr. Wicks and resulted in the aforementioned harm.

53. As a result of the actions and omissions of Defendant City of Portland, Mr. Wicks suffered pain, humiliation, fear, and other injury. The above-described negligence also deprived and continues to deprive Mr. Wicks of his personal property, the car that he cherished and that he depended on for protection from the elements and personal safety while living on the streets. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

### Claim 6: Intentional Infliction of Emotional Distress
### (State Tort Claim against Defendant City of Portland)

54. Plaintiff re-alleges and incorporates the paragraphs above as if fully stated herein.

55. In mocking Mr. Wicks, Defendant City of Portland's employees, including the other named Defendants, intended to inflict severe mental or emotional distress on Mr. Wicks; or that distress was substantially certain to result from their conduct.

56. As a direct result of the above-described actions of Defendant City of Portland and its employees, Mr. Wicks experienced severe emotional distress.

57. The actions of Defendant City of Portland and its employees, in mocking Mr. Wicks, separating him from his caretaker son, handling him roughly, an abandoning him in a shelter with no means to contact his son or take care of his serious medical needs, were an extraordinary transgression of the bounds of socially tolerable conduct.

58. Mr. Wicks is entitled to compensatory and pecuniary damages in an amount to be determined at trial.

### REASONABLE ATTORNEY'S FEES AND COSTS

59. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

60. Plaintiff requests that the Court grant a reasonable attorney's fee in this action.

### CONCLUSION

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

- A.  For economic, non-economic, and punitive damages in an amount to be determined at trial;
- B.  For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and
- C.  Such other relief as the court deems just and proper.

DATE:  January 18, 2023.

                                            */s/ Alex Meggitt*
                                            Alex Meggitt, OSB #174131
                                            ameggitt@ojrc.info
                                            PO Box 5248
                                            Portland, OR 97208
                                            Attorney for Plaintiff